No. 16.—MATTHEW H. MYRICK, plaintiff in error, *vs.* ELIJAH HICKS and EWEL WEBB, defendants in error.

[1.] A new trial will not be granted, if the verdict of the Jury was right, although the charge of the Court may have been wrong.

Debt, on Sheriff's bond, in Crawford Superior Court.    Tried before Judge POWERS, September Term, 1853.

In November, 1842, Matthew Myrick obtained a judgment for $747.41, principal, and $54.81, interest, on an attachment against Elkanah Sawyer and another.   George Moore, at the same time, recovered $928.98, principal, and $68.03 cents interest, against Sawyer.

Moore and Myrick afterwards purchased jointly, and took, by assignment to Myrick, for the use of himself and Moore, a *fi. fa.* against Sawyer and one Littlebury Boon, from Littlebury Lucas, dated in August, 1842, for $1278, principal, and $65.34, interest.

Elijah Hicks, as Sheriff of Crawford county, sold the property of Sawyer, to the amount of $3600, on these several executions; and on a collateral issue, formed upon a rule against Hicks, the Jury found in his hands, $1024 of the proceeds of the sale of the defendant's property, unaccounted for.

This action was brought against Hicks and Webb, his security, on the judgment entered up, on the verdict of the Jury, finding the $1024 in the hands of the Sheriff.   The action was originally brought for the individual claim of Moore— the individual claim of Myrick, and the joint demand of Moore and Myrick, springing out of the Lucas *fi. fa.*

Under directions from the Supreme Court, given at Decatur, August Term, 1852, plaintiffs amended their writ, by striking therefrom the first and last claims, and the breeches assigned thereon.

On the trial, the plaintiff gave in evidence, the attachment *fi. fa.*, in favor of Myrick, on which was the following entry :

" The above property, (meaning the property levied on by the attachment,) sold on the first Tuesday in March, 1843, and the money applied to older *fi. fas.* and judgments.    June 28th, 1843.                              E. H. HICKS, Sheriff.

In his charge to the Jury, the Court held this entry as conclusive against the plaintiff, inasmuch as it was not assailed by any charge in the declaration, and evidence to support such charge.

In the progress of his charge to the Jury, counsel for plaintiff desired to interrupt the Judge, and to request him to charge differently.    The Court refused; and to these rulings of the Court, counsel for plaintiff excepted.

HAMMOND, for plaintiff in error.

S. & R. P. HALL, for defendants in error.

*By the Court.*—BENNING, J. delivering the opinion.

This is a suit which is brought for the use of Myrick alone. [1.] In the declaration, it is alleged, substantially, as follows: that Myrick had issued an attachment against one Sawyer; that on the seventeenth of February, 1842, this attachment was levied on eight negroes, and on the twentieth of February, 1842, was levied on five negroes, to wit: "Pompey, Philip, Anderson, Leanah and Elizabeth"; that on the 22d of November, 1842, Myrick recovered a judgment in the attachment, for $747 41½, with interest and cost.

That in 1842, one Lucas, in the Superior Court of Crawford, recovered a general judgment against the same Sawyer and one Boon, for $1278 71, of principal, $65 34, of interest, counted to the 30th of August, 1842.

That one Harvey caused an attachment to be issued against the same Sawyer and Boon; that on the seventeenth of February, 1842, this attachment was levied on divers negroes of Sawyer's viz: the same eight aforesaid; that on the twentieth

of February, the same attachment was levied on other proper-
ty of Sawyer's, to wit: the same five negroes aforesaid; that
on 22d of November, 1842, Harvey recovered a judgment in
the attachment, for $1442 02, with interest and costs, and that
afterwards, of this sum, he remitted a part, viz: $141 50.

The declaration, according to the transcript before this
Court, contains these words: "and the plaintiff shows that
George Moore had an attachment issued against Elkanah Saw-
yer and Littleberry Boon, returnable to the Inferior Court of
Crawford county, which was, *on the* 18*th February*, 1842, *le-
vied on divers property of the said Sawyer, to wit: Pompey,*
*Philip, Anderson, Leanah and Elizabeth,* which will all more
fully appear, by reference to said attachment and proceedings
thereon.    And afterwards, at the November Term of 1842, of
said Crawford Inferior Court, said Moore recovered of said
Sawyer and said Boon, the sum of nine hundred and twenty-
eight dollars and seventy-eight cents, with interest and cost of
suit".

It is alleged, in the declaration, that the eight and the five ne-
groes aforesaid, were all, by virtue of the *fi. fa.* from the
aforesaid judgment of Myrick, on the 28th of June, 1843, sold
by Hicks, the Sheriff, for $3678 25, "or other large sum".

It appears, from the Sheriff's answer, which was put in ev-
idence on the trial, that the sum for which the negroes sold,
was $3760, "or thereabout"; and that of this sum, the Sher-
iff had paid out about $70, towards costs in other cases, under
an order of the Inferior Court.

It is also recited in the declaration, that Harvey had been
paid out of this money.

It appears from the evidence used on the trial, viz: the rule
absolute in favor of Lucas, Moore, Myrick, Harvey and oth-
ers, against Hicks, as Sheriff, that the amount of the Harvey
*fi. fa.,* as well as of the Lucas *fi. fa.,* was to be *deducted* from
this money, before any of it was to be paid over to the attor-
ney of Myrick.    Such was the order.

It appears from the Sheriff's answer in the rule, that he had
in fact paid on the Harvey *fi. fa.,* about $1500 of the money.

These being facts in the case, was Myrick entitled to a verdict, for any amount, against the Sheriff? Most certainly he was not.

The Lucas judgment has precedent of all. It was for $1278.72 of principal, and $65.34 of interest, besides costs.

The Harvey attachment, although of the same date of levy as the Myrick attachment, had precedence of the latter. How it got this, is not apparent to this Court. The rule against the Sheriff gives it the preference; the declaration recites that it had actually been paid; the Sheriff's answer, which was in evidence, states that $1500 had been paid upon it.

This attachment was for $1442.02, less $141.50—1301.52.

The Moore attachment, with respect to *five* negroes, had precedence of the Myrick and Harvey attachments. It was levied on these five negroes, on the 18*th* of February, 1842; whereas, those attachments were not levied on *these* negroes, until the 20*th* of the same month and year. And these negroes were of a value, no doubt, sufficient to satisfy the attachment. What they sold for, therefore, had first to be applied to the payment of the Moore attachment, before any of it could be applied to the Myrick attachment.

The Moore attachment was for $928.98, besides interest.

The amount for which the negroes sold was, say $3760; out of this had first to come the Sheriff's commissions.

Taking all of these demands, first, out of the fund, did any thing remain for Myrick? Let us see.

| The Lucas *fi. fa.* | Principal, | $1278.72 |
| | Interest, | 65.34 |
| | Costs, | |
| The Harvey attachment, | Principal, | $1301.52 |
| | Interest, | |
| | Costs, | |
| The Moore attachment, | Principal, | $928.98 |
| | Interest, | |
| | Costs, | |
| Total, | | $3575.56 |

This total is to be increased indefinitely, by costs and by in-

terest. When so increased, it will doubtless be larger than the fund in hand, viz: $3760, less the Sheriff's commissions. That being so, there is nothing in the Sheriff's hands, coming to the Myrick attachment.

And that is what the verdict of the Jury amounts to. It is the only conclusion to which they could come, upon the facts which they had to consider.

And a verdict which is clearly right, will not be disturbed, even if, in the course of the trial, errors have been committed by the Court. *Arrington vs. Cherry*, (10 *Ga. R.* 434.) In such case, the errors do no harm.

This is enough to require this Court to affirm the general re-sult of the case below.

But it is proper for me to say, that there exists another rea-son which, perhaps, is equally fatal to the plaintiff in error.

The suit is upon a Sheriff's bond. There is no evidence that *this* suit was brought by order of the Superior Court of Crawford County. There is no evidence that any such order was ever applied for, or was ever granted. There is an order in existence, but that applies to another case than this.

Can suit be brought upon a Sheriff's bond, without the pre-vious obtainment of an order of the Superior Court, of the prop-er county, for leave to bring the suit ? Under the 46th section of the Judiciary Act of 1799, I think it cannot. If I am right in this—in the non-existence of such an order, the Jury could not have rendered a valid verdict for the plaintiff, even if the Sheriff had had in his hands money enough to satisfy the plain-tiff's attachment. The suit, from beginning to end, would be void. It would be no bar to another suit, properly founded upon a proper order. In such a case, it would be useless for this Court to order a new trial.

The decision of the Court, however as a Court, is put upon the first ground. Considering the first ground sufficient, the Court did not make up an opinion on the second, or indeed even more than glance at that ground.